IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GHASSAN ADNAN HADI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| KIRSTJEN NIELSEN, SECRETARY, | § | CIVIL ACTION NO. H-17-2370 |
| U.S. DEPARTMENT OF HOMELAND | § | |
| SECURITY and MARK SIEGL, | § | |
| FIELD OFFICE DIRECTOR, U.S. | § | |
| CITIZENSHIP & IMMIGRATION | § | |
| SERVICES, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ghassan Adnan Hadi ("Plaintiff" or "Hadi") filed this action on August 3, 2017, against Kirstjen Nielsen, the Secretary of the United States Department of Homeland Security, and Mark Siegl, a Field Office Director for United States Citizenship & Immigration Services ("Defendants") seeking de novo review of his denied application for naturalization. Pending before the court is Defendants' Motion for Summary Judgment ("Defendants' MSJ") (Docket Entry No. 24). For the reasons explained below, Defendants' MSJ will be granted.

I. **Factual and Procedural Background**

Hadi applied for naturalization by submitting a form N-400, Application for Naturalization ("N-400") to United States Citizenship and Immigration Services ("USCIS") on November 22,

2013, on the basis of having been a Lawful Permanent Resident for at least five years.[1] Hadi was interviewed by Immigration Service Officer Nancy Kugler ("ISO Kugler") on August 24, 2014.[2] ISO Kugler placed Hadi under oath and conducted and recorded an administrative hearing on his application.[3]

On January 13, 2015, USCIS denied Hadi's naturalization application because he failed to demonstrate that he had been a person of good moral character during the statutory period.[4] USCIS based this finding on false statements made by Hadi to ISO Kugler during his naturalization interview. USCIS found that Hadi failed to disclose that he had used several other names in the past. USCIS also found that Hadi provided inconsistent testimony about his (and his family's) service in the Iraqi military and his connection to the Ba'ath Party, which was affiliated with the

---

[1] See USCIS File No. A212205201, Subject Ghassan Adnan Hadi ("Hadi's USCIS File"), Exhibit A to Defendants' Appendix in Support of Motion for Summary Judgment ("Defendants' Appendix"), Docket Entry No. 25, pp. 230-39 [The page numbers used to identify documents in Hadi's USCIS File are the page numbers handwritten in the bottom right-hand corner and not the page numbers listed on CM/ECF.].

[2] See Transcript dated August 25, 2014, N-400 Hearing ("Transcript of Hearing with ISO Kugler"), Exhibit B to Defendants' Appendix, Docket Entry No. 25-1, p. 2 ln. 2-11 [Page and line numbers correspond to the page and line numbers on the hearing transcript and not the page numbers listed on CM/ECF.].

[3] See id. at 3 ln. 12-21.

[4] See Hadi's USCIS File, Exhibit A to Defendants' Appendix, Docket Entry No. 25, pp. 62-66.

totalitarian regime of Saddam Hussein.[5]  Accordingly, USCIS determined that Hadi had given "false testimony to obtain an immigration benefit" at his naturalization interview and was therefore statutorily barred from being found to be a person of good moral character.[6]  See 8 U.S.C. § 1101(f)(6) ("No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established is, or was-- . . . one who has given false testimony for the purpose of obtaining any benefits under this chapter. . .").

Hadi filed a timely administrative appeal in February of 2015.[7]  On July 14, 2015, Hadi appeared before ISO Donna Jones ("ISO Jones") for an interview in connection with his appeal.  ISO Jones placed Hadi under oath and conducted and recorded an administrative hearing.[8]  The recording of Hadi's interview with ISO Jones ended abruptly while ISO Jones was still questioning Hadi.[9]  On April 4, 2017, USCIS reaffirmed its January 15, 2015,

---

[5] See id. at 66.

[6] See id.

[7] See Hadi's USCIS File [Form N-336 Request for a Hearing on a Decision in Naturalization Proceedings], Exhibit A to Defendants' Appendix, Docket Entry No. 25, pp. 57-61.

[8] See Transcript dated July 14, 2015, N-336 Hearing ("Transcript of Hearing with ISO Jones"), Exhibit C to Defendants' Appendix, Docket Entry No. 25-1, p. 2 ln. 2 - p. 3 ln. 17 [Page and line numbers correspond to the page and line numbers on the hearing transcript, not the page numbers listed on CM/ECF].

[9] See id. at 26.  The parties provide no explanation as to why a complete transcript of Hadi's interview with ISO Jones is unavailable.  Because it is possible that Hadi could have clarified
(continued...)

denial of Hadi's N-400 on the ground that Hadi failed to establish that he was a person of good moral character.[10]

Hadi filed this action on August 3, 2017, seeking <u>de novo</u> review of his denied application for naturalization.[11] Defendants' MSJ argues that Hadi "cannot as a matter of law establish that he was and continues to be a person of good moral character during the requisite period, and has otherwise failed to create a genuine dispute of material fact as to whether he has met his burden of demonstrating good moral character."[12]

## II. <u>Summary Judgment Standard</u>

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2510

---

[9](...continued)
initially false statements made during his interview with ISO Jones after the recording stopped, the court did not rely on false statements made by Hadi to ISO Jones in determining whether Hadi was statutorily barred from establishing that he is of good moral character.

[10]<u>See</u> Hadi's USCIS File, Exhibit A to Defendants' Appendix, Docket Entry No. 25, pp. 2-6.

[11]<u>See</u> Plaintiff's Original Complaint for Declaratory and Injunctive Relief, Docket Entry No. 1, pp. 1-2.

[12]<u>See</u> Defendants' MSJ, Docket Entry No. 24, p. 1.

(1986). The moving party is entitled to judgment as a matter of law if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting Celotex, 106 S. Ct. at 2553). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Id. If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Id.

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000). The court resolves factual controversies in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

### III. Applicable Law

Under 8 U.S.C. § 1421(c) the district court reviews USCIS's decision to deny a naturalization application de novo. Aparicio v. Blakeway, 302 F.3d 437, 445 (5th Cir. 2002). An applicant for naturalization must satisfy certain statutory and regulatory requirements. See, e.g., 8 U.S.C. §§ 1101, 1427, 1429, 1430; 8 C.F.R. §§ 310, 312, 316. The applicant for naturalization "shall bear the burden of establishing by a preponderance of the evidence that he or she meets all of the requirements for naturalization." 8 C.F.R. § 316.2(b). Because citizenship once granted cannot lightly be taken away, "'doubts should be resolved in favor of the United States and against the claimant.'" Berenyi v. District Director, Immigration and Naturalization Service, 87 S. Ct. 666, 671 (1967). When an applicant fails to show that he has met all statutory requirements for becoming a naturalized citizen, summary judgment for the government may be appropriate. Chan v. Gantner, 464 F.3d 289, 295-96 (2d Cir. 2006); see also Kariuki v. Tarango, 709 F.3d 495, 503 (5th Cir. 2013) (holding that a "hearing de novo" within the meaning of the INA encompasses review on summary judgment under Federal Rule of Civil Procedure 56).

To be eligible for naturalization under 8 U.S.C. § 1440, an applicant must demonstrate that he "has been and still is a person of good moral character" during the five years prior to the submission of his application for naturalization, and continuing

throughout the naturalization process. 8 U.S.C. § 1427(a); 8 C.F.R. §§ 316.10(a)(1), (a)(2). Certain statutory bars preclude a finding of good moral character. See 8 U.S.C. § 1101(f). One of the statutory bars mandates that "[n]o person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is or was . . . one who has given false testimony for the purpose of obtaining any benefits under" the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1101(f)(6). "Testimony" is limited to oral statements made under oath and does not include other types of misrepresentations or concealments, such as false statements on documents or statements not made under oath. Kungys v. United States, 108 S. Ct. 1537, 1551 (1988). The false information need not have been material to trigger the statutory bar. Id. at 1552. For the statutory bar in § 1101(f)(6) to apply, the dishonest statements need only be made with the subjective intent of obtaining an immigration benefit. Id.

Even if an applicant is not statutorily barred from demonstrating that he is a person of good moral character under § 1101(f)(6), § 1101(f) also contains a "catch-all" provision: "The fact that any person is not within any of the [statutorily barred] classes shall not preclude a finding that for other reasons such person is or was not of good moral character." 8 U.S.C. § 1101(f). In determining whether an applicant meets the requirement of the catch-all provision, the adjudicator must

consider all of the petitioner's evidence on factors relevant to the determination of good moral character. United States v. Dang, 488 F.3d 1135, 1139 (9th Cir. 2007). Moral character determinations are made on a "case-by-case basis taking into account the elements enumerated in this section and the standards of the average citizen in the community of residence." 8 C.F.R. § 316.10(a)(2).

## IV. Analysis

Defendants argue that they are entitled to summary judgment because Hadi is statutorily barred from establishing that he is a person of good moral character under § 1101(f)(6). Alternatively, Defendants argue that even if Hadi is not statutorily barred from establishing good moral character, Hadi cannot meet his burden of proof to demonstrate that he is of good moral character under § 1101(f)'s catch-all provision.

For summary judgment to be appropriate, Defendants must show that there are no genuine disputes of material fact as to Hadi's inability to demonstrate that he is of good moral character. If Defendants satisfy this initial burden, Hadi must show through admissible evidence that disputed fact issues remain. See Kariuki, 709 F.3d at 505 ("[E]vidence of Kariuki's prior bad conduct was relevant to ruling on his naturalization application, and Kariuki needed to rebut it with sufficiently probative evidence of good present conduct to survive summary judgment.").

A.  **False Testimony**

Defendants cite two categories of false testimony that statutorily bar Hadi from proving that he is of good moral character: (1) Hadi failed to disclose all of his names in his interview with ISO Kugler, and (2) Hadi made false and misleading statements regarding his and his family's affiliation with the Ba'ath Party and the Iraqi military to ISOs Kugler and Jones. Because Hadi bears the burden of proving that he is of good moral character, Hadi bears the burden of showing that he did not testify falsely. See Berenyi, 87 S. Ct. at 671 ("[I]t has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect.").

1.  Hadi's Names and Aliases

The N-400 instructs: "If you have ever used other names, provide them below."[13] Hadi left this section blank.[14] In his naturalization interview, ISO Kugler asked Hadi if he had ever used any name other than "Ghassan Adnan Hadi," to which Hadi responded "No, ma'am."[15]

---

[13]See Hadi's USCIS File, Exhibit A to Defendants' Appendix, Docket Entry No. 25, p. 230.

[14]See id. (showing only ISO Kugler's handwritten notation from Hadi's interview stating "none used").

[15]See Transcript of Hearing with ISO Kugler, Exhibit B to Defendants' Appendix, Docket Entry No. 25-1, p. 2 ln. 2-11.

The parties do not dispute that Hadi's interview with ISO Kugler constitutes "testimony" under § 1101(f)(6). Defendants argue that this testimony was false because Hadi had used other names. When Hadi applied for refugee status, he submitted forms to USCIS in which he represented that in addition to using the name "Ghassan Adnan Hadi," he also used several other names, including: Gassan Adnan; Ghassan Adman Hadi; Ghassan Adnan Hadi Tofan Al Fayadh; and Gassan Al Fayadh.[16] Hadi argues that the testimony he gave to ISO Kugler was not false because the various names cited by Defendants are merely other forms of his Arabic name. Hadi argues that any misinterpretation or failure to disclose the other names in the interview was not the result of intentional deception and that he did not omit the names with the intent of obtaining an immigration benefit.[17]

In order for § 1101(f)(6)'s statutory bar to apply, Hadi must have denied using another name with the subjective intent to obtain an immigration benefit. There is no evidence that Hadi's response to ISO Kugler's question about his "other names" was made with the requisite intent. Defendants do not argue that knowledge of Hadi's

---

[16] See Hadi's USCIS File, Exhibit A to Defendants' Appendix, Docket Entry No. 25-1, p. 300.

[17] Hadi also argues that he had already disclosed the prior forms of his name to USCIS during other parts of the immigration process. However, this is not relevant to the inquiry of whether he gave false testimony at his interview with ISO Kugler. Section 1101(f)(6) is not concerned with the substance of the false testimony, but rather the fact that the applicant gave false testimony.

other names would have impacted his application for naturalization. On the record before the court it is plausible that Hadi's answer was the result of an oversight instead of an intentional misrepresentation. The court therefore finds that Hadi is not statutorily barred from establishing good moral character for neglecting to disclose his other names because genuine issues of fact remain as to whether Hadi did so with the intent to obtain an immigration benefit.

    2.   <u>Affiliation With Ba'ath Political Party and Iraqi Military</u>

Defendants argue that because Hadi's statements regarding his affiliation with the Ba'ath Party are contradictory, some of his statements must necessarily be false. Defendants rely on inconsistencies between Hadi's written submissions to USCIS and his testimony before ISOs Kugler and Jones to show that he testified falsely. However, false statements made in written submissions are not "false testimony" within the meaning of § 1101(f)(6) -- Hadi is only statutorily barred under § 1101(f)(6) if a statement he made to ISO Kugler or ISO Jones under oath is false. Inconsistencies between Hadi's oral and written testimony alone, therefore, are not sufficient to warrant application of the statutory bar. Only a false oral statement under oath will give rise to the statutory bar.

Defendants argue that Hadi provided false testimony because of the conflicting nature of some statements made by Hadi during his naturalization interviews. While some of the statements made by Hadi to ISOs Kugler and Jones are contradictory, Hadi timely

-11-

corrected his responses to some of their inquiries. See Ruiz-Del-Cid v. Holder, 765 F.3d 635, 641 (6th Cir. 2014) ("According to the BIA's longstanding interpretation of [§ 1101(f)(6)'s false testimony exclusion], applicants who gave false testimony but corrected their testimony voluntarily and prior to exposure or threat of imminent exposure may still be persons of good moral character.") (citing Matter of M—, 9 I. & N. Dec. 118, 119 (BIA 1960)). For example, ISO Kugler asked Hadi whether he had ever served in the Iraqi military, and Hadi replied "No, ma'am."[18] Later in the interview, Hadi corrected that he served in the Iraqi military.[19] Contradictions such as this that Hadi timely corrected cannot support the application of § 1101(f)(6)'s statutory bar.

However, Hadi made at least one false statement to ISO Kugler in his naturalization interview that he failed to correct. ISO Kugler asked Hadi whether he had "ever been a member of or associated in any way with any organization, association, fund, foundation, party, club, society, or similar group in the United States or any other place."[20] Hadi responded "No, ma'am."[21] While Hadi mentioned later in the interview that he believed the

---

[18]See Transcript of Hearing with ISO Kugler, Exhibit B to Defendants' Appendix, Docket Entry No. 25-1, p. 29 ln. 16-17.

[19]See id. at 30 ln. 6-8.

[20]See id. at 19 ln. 15-19.

[21]See id. at 19 ln. 20.

Ba'ath Party to be responsible for his father's death,[22] he never acknowledged his own membership in that organization. USCIS cited Hadi's failure to disclose his affiliation with the Ba'ath Party to ISO Kugler in its Decision as a basis for denying his application for naturalization.[23]

When Hadi denied being affiliated with a "party" despite his prior involvement with the Ba'ath Party, he provided false testimony. In light of the United States' interest in carefully examining applicants affiliated with Saddam Hussein's regime, it is reasonable to conclude that Hadi was aware that his affiliation with the Ba'ath Party could negatively affect his application for naturalization. He therefore had an interest in downplaying his involvement with the Ba'ath Party. Hadi provides no explanation for his failure to disclose this information to ISO Kugler. While Hadi provided detail on his membership and involvement with the Ba'ath Party in previous applications submitted to USCIS and in his later interview with ISO Jones, he did not disclose his affiliation with the Ba'ath Party during his application for <u>naturalization</u> until after his N-400 was rejected by USCIS. It is not relevant that USCIS may have been aware of Hadi's affiliation with the Ba'ath Party -- § 1101(f)(6) is concerned not with the substance of

---

[22]See id. at 29 ln. 14-15.

[23]See Hadi's USCIS File, Exhibit A to Defendants' Appendix, Docket Entry No. 25-1, pp. 69-70.

false testimony, but the fact that an applicant provided false testimony.

Only one false statement under oath with the intent to obtain an immigration benefit is required for the application of § 1101(f)(6)'s statutory bar. Because Hadi provided false testimony to ISO Kugler with the intent to obtain the benefit of naturalization, Hadi is statutorily barred from demonstrating that he is of good moral character.

## B. Section 1101(f)'s Catch-All Provision

Defendants argue that even if the statutory bar in § 1101(f)(6) is inapplicable, Hadi is still unable to meet his burden of proof to show that he is of good moral character. Defendants argue that Hadi engaged in a pattern of dishonest behavior warranting a finding that he is not of good moral character under § 1101(f)'s catch-all provision. In his Response, Hadi argues that he has always been honest about his relationship with the Ba'ath Party. Examples found in Hadi's USCIS file, however, demonstrate otherwise.

Hadi's USCIS file contains several conflicting statements. It is impossible for all of the statements made by Hadi in connection with his applications for refugee status, lawful permanent resident status, and naturalization to be true. For example, when asked by

ISO Jones if he attended Ba'ath Party meetings, Hadi first stated "No, no meetings, ma'am."[24] Later in the same interview, Hadi admitted that he attended one meeting per month.[25] When applying for refugee status, Hadi admitted that he was a member of the Ba'ath Party but stated that he did not attend any meetings.[26] During an interview in conjunction with his refugee status application in 2008, however, Hadi said both that he "attended weekly meetings" and attended meetings "either once or twice a month."[27] In response to an interrogatory in connection with this action, Hadi stated that he "attended meetings every one or two weeks."[28] Hadi's USCIS file contains other similar conflicts, most relating to his affiliation with the Ba'ath Party and the Iraqi military.[29] Hadi's form N-400 also contains false statements. For

---

[24]See Transcript of Hearing with ISO Jones, Exhibit C to Defendants' Appendix, Docket Entry No. 25-1, p. 25 ln. 15.

[25]See id. at 26 ln. 3.

[26]See Hadi's USCIS File [Form I-590, Registration for Classification as Refugee], Exhibit A to Defendants' Appendix, Docket Entry No. 25-1, pp. 287, 290.

[27]See Hadi's USCIS File, Exhibit A to Defendants' Appendix, Docket Entry No. 25-1, pp. 431-32.

[28]See Responses to Interrogatories, Exhibit D to Defendants' Appendix, Docket Entry No. 25-1, pp. 10-11.

[29]Compare Hadi's USCIS File, Exhibit A to Defendants' Appendix, Docket Entry No. 25-1, p. 290 (stating that Hadi said he was classified as a "Supporter," the first level of membership in the Ba'ath Party), with Responses to Interrogatories, Exhibit D to Defendants' Appendix, pp. 10-11 (Hadi claimed he was the second
(continued...)

example, Hadi denied being a member of any "organization, association, fund foundation, party, club, society or similar group," despite his involvement in the Ba'ath Party.[30] Hadi also failed to disclose previously used names.[31]

Hadi bears the burden of proving that he is currently (and has been for the statutory period) a person of good moral character. Hadi has failed to raise a genuine dispute of material fact as to whether he is a person of good moral character under § 1101(f).

V. Conclusion & Order

Hadi is statutorily barred from satisfying his burden of proof to show that he is of good moral character because he provided false testimony with the subjective intent of obtaining an immigration benefit. In addition, regardless of whether Hadi is statutorily barred from establishing that he is of good moral character under § 1101(f)(6), the totality of the evidence shows that Hadi will not be able to satisfy his burden to prove that he

---

[29](...continued)
level of "Nasir" in the Ba'ath Party).

[30]See Hadi's USCIS File, Exhibit A to Defendants' Appendix, Docket Entry No. 25-1, p. 236.

[31]Compare id. [Form G-325C] at 300 (listing aliases Gassan Adnan; Ghassan Adman Hadi; Ghassan Adnan Hadi Tofan Al Fayadh; and Gassan Al Fayadh), with id. at 230 (claiming no additional names).

is of good moral character under § 1101(f). Defendants' Motion for Summary Judgment (Docket Entry No. 24) is therefore **GRANTED**.

**SIGNED** at Houston, Texas, on this 12th day of April, 2019.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE